# THE PEOPLE OF THE STATE OF NEW YORK *v.* BENJAMIN BRANDRETH AND OTHERS.

### *Set-Off—Powers of State Prison Agent—Debt against State.*

Money borrowed by the State Prison at Sing Sing of a Bank for the purpose of purchasing supplies of food, &c., for the prisoners, does not constitute a debt against the State.

The agent of the Prison is not authorized to borrow money on the credit of the State.

THIS was an action brought by the People against Benjamin Brandreth and six others upon a bond dated May 28, 1860, by which they became sureties that the Bank of Sing Sing would repay all moneys deposited with it to the credit of the Treasurer of the State.

The facts are fully stated in the opinion of the Court.

*Lyman Tremain* for Appellant.

*J. H. Martindale,* Attorney-General, for Respondent.

GROVER, J.—The question principally argued by the counsel for the Appellant is not, I think, necessarily involved in the decision of this case. That question is whether in actions brought by the people counter-claims or set-offs can be interposed by the Defendant the same as in actions prosecuted by individuals. Neither do I think it necessary to determine whether the Defendants were at liberty to avail themselves of. an indebtedness to the bank in this suit. The evidence offered and resisted upon the trial did not tend to show any indebtedness thereof, legal or equitable, in a legal sense of the latter term, of the State to the bank. That offer was to show that the State's prison at Sing Sing had borrowed money from the bankers, and had expended the same in purchasing supplies and food, &c., for the prisoners. This was the counter-claim set up in the answer, and this the Defendants offered to prove, and all they offered to prove. The case states that the evidence was rejected on the sole ground that in an action by the State to recover money, no counter-claim or set-off can be allowed,

to which ruling the Defendants' counsel excepted. It is clear that error cannot be predicated upon the ground assigned for a ruling, or upon which it was made, when it appears clear that any different returns upon the question would have been erroneous. In the present case, if the evidence offered and rejected, in no possible view had a tendency to show any counter-claim by the bank against the State, its rejection was proper, and it was wholly immaterial to the Defendants upon what ground it was based. This applies only to cases where it is impossible to obviate the difficulty on trial. It only remains to show that the evidence offered had no tendency to show any counter-claim either at law or in equity in favor of the bank against the State. This appears from the total want of authority of the agent of the prison to borrow money on the credit of the State. It was not pretended that any such authority was conferred by any act of the legislature, even if that department of the government could confer such power upon him. (See Const., Sec. 8, Art. 10.) Nor did any other department of government pretend to give him any such authority. All that appears is, that the agent wanted money for the use of the prison, and the bank loaned it to him. He had no color of authority to borrow upon the credit of the State. If he had, every canal superintendent, indeed nearly every administrative officer, possesses the same power. If this be so, it is utterly impossible to preserve any control over the State finances. It is clear that the agent had no power to borrow the money. His so doing created no equitable or legal claim against the State, cognizable by the courts. The claim is entirely analogous to that of a party who should expend money to improve the real estate of a non-resident owner without his knowledge or assent. He would have no claim to reimbursement that could be enforced at law, or in equity. His only remedy would be to lay the facts before the owner, and be content with what he was willing to give. So in the present case, should the State consent to become suable in claims by individuals, no action for this claim could be maintained by the bank. Its only remedy is an application to the legislature, and content itself with what that body may deem justice in the premises.

Meantime this debt of the bank to the State, for which these Defendants have become sureties, should be promptly paid, and the judgment appealed from should be affirmed.

Concurring, BOCKES, SCRUGHAM, WRIGHT, and DAVIES.

For reversal, HUNT and PORTER.

HUNT, J. (dissenting).—This action was tried at the Westchester Circuit in September, 1864.

To maintain their action, the Plaintiffs introduced in evidence a bond signed by all, of the Defendants, dated May 28, 1860, and upon the condition " that the Bank of Sing Sing shall well and truly pay, or cause to be paid to the Treasurer of the State of New York, all moneys deposited, or which hereafter may be deposited, to his credit as Treasurer of the State of New York, in the Bank of Sing Sing, by the agent and warden of the Sing Sing prison, upon presentation to the Bank of Sing Sing of the drafts or checks of the said Treasurer." It was admitted by the Defendants upon the trial, that between the 30th day of May, 1860, and the 18th day of September, 1860, there was deposited in the Bank of Sing Sing, by the agent and warden of the Sing Sing prison, of the earnings of prisoners, $59,753, and that of this sum there remained on deposit on the 3d day of September, 1860, the sum of $29,222.70 : that upon that 3d day this sum was drawn for by a draft of the Treasurer of the State of New York, for the sum of $29,222.72, that the payment of said draft was refused, and the same was protested by non-payment. The excess of two cents in the draft, on the deposit, was not noticed on the trial, or on the argument, and is probably an error.

To sustain their defence, the Defendants offered to prove the following facts : First. That the State was and is indebted to the Bank of Sing Sing in the sum of $17,372.27, with interest from December 22, 1854. Second. That the Bank of Sing Sing is insolvent. Third. That said indebtedness arose from moneys borrowed by the agent and warden of the Sing Sing Prison, which were necessary and were used for obtaining supplies of food for the inmates of said prison. The Plaintiffs' counsel objected to the evidence,

and the Court excluded it, solely on the ground that in an action by the State to recover money no counter-claim or set-off could be allowed, and directed a judgment for the Plaintiffs. Upon appeal to the General Term of the second district, the judgment was affirmed.

It is quite clear that the evidence offered by the Defendants did not establish a technical set-off. It failed in the indispensable qualification of not being a " demand due to the Defendants in their own right." (2 R. S. 353, 366.) It was in form, as asserted, a demand due to one not a party to the suit, to wit, the Bank of Sing Sing. It failed as a counter-claim substantially for the same reason. It was not a demand "arising on a contract and existing in form of the Defendants against the Plaintiff." (Code, § 150.) Conceding these propositions, I am yet of the opinion that the Court erred in excluding the evidence offered.

Viewing it as a question between individuals, the case before the Court was simply this: The Defendants were sureties that the Sing Sing Bank would pay to the People, on draft, all the money that should be deposited to its credit by the warden of the prison. There was a balance due on such deposits of $29,000. The bank, however, had advanced to the People, through the same warden, the sum of $17,000; and if the bank had been the Defendant in the present suit instead of the sureties, no more than the difference between the two sums, to wit, $12,000, could have been recovered. The sureties are claimed to be liable for their principal in the sum of $29,000, while the principal himself is liable in the sum of $17,000 only.

Every man's sense of equity revolts at this proposition. It is inequitable and unjust, that a surety, always regarded with favor, should be compelled to occupy a position of greater liability than his principal. In a court of law, where justice is administered by rigid rules, and forms sometimes endanger right, the Defendants would be embarrassed by the existence of the propositions laid down by the Court below, that this defence was not a set-off because it was not due to the Defendants in their own right, and that it was not a counter-claim because it was not a demand existing in form of the Defendants against the Plaintiffs.

No such embarrassment, however, exists in a court of equity, whose powers are sufficiently extensive always to apply a remedy where a clear injustice is discovered to exist. Independently of all statutes, courts of equity, in virtue of their general jurisdiction, grant relief in cases of mutual debts or credits. (Story Eq. Jur. § 1435.) Then, where there is a legal debt upon one side, and an equitable debt upon the other, and where special circumstances exist requiring such interpretation, a joint debt may be set off against a separate debt, or a separate debt against a joint one. (§§ 1436, 1437.) "So if one of the joint debtors is only a security for the other, he may in equity set off the separate debt due to his principal from the creditor, for in such case the joint debt is nothing more than a security for the separate debt of the principal; and upon equitable considerations, a creditor who has a joint security for a separate debt, cannot resort to that security without allowing what he has received on the separate account, for which the other was security." (§ 1437.) See, also, *ex parte* Hanson, 12 Ves. 345. *Ex parte* Stephens, 11 Ves. 24, notes.

The bank is assumed by the proposition to have been insolvent, and if the Defendants were compelled to pay this amount, the same could not be collected from the bank, though admitted to be a just debt. The Defendants would be remediless.

The application of these principles relieves the case from technical difficulties, and entitles the Defendants to make the proof offered. See, also, Gillespie *v.* Torrance, 25 N. Y. 306; Code, § 150, last clause, as to the form of the defence.

Had the parties to this action been individuals, instead of the State being Plaintiffs, upon the doctrine established by these authorities there would have been error in excluding the defence offered.

It is claimed, however, that when the State is the Plaintiff, a different rule prevails, and that no demand can be set off against an established claim of the State, until it is audited by the proper accounting officers, pursuant to some statute. In their argument upon this point, the Plaintiffs insist that a demand against the State is not a debt, in the sense that it can be set off,

and that it is at the most a "mere claim upon legislative conscience and discretion."

I cannot assent to this standard of estimating the obligation of a State or nation. The certain liquidated obligation of a State is governed by no lower rules, to say the least, than govern the obligations of individuals. It is in no sense a question of discretion nor of conscience, except of that good conscience which requires the rigid performance of acknowledged duty. If payable at a day named, the State is then bound to meet its obligation ; and if held by the citizens of a foreign country, its non-payment is just cause of war. A failure to pay, whether to its own citizens or to strangers, subjects it to a disgrace, which can only be removed by a removal of the cause. Repudiation by a nation is the equivalent of fraudulent bankruptcy by an individual. It is true that a State cannot be sued, but this only makes more imperative the duty properly to meet all its pecuniary engagements.

Honor, morality, and duty, require it to perform its promises ; and the fact that it cannot be arraigned in its own Courts, can furnish no justification for its refusal.

Nor am I aware of any rule of law which requires the obligation of a State to be submitted to its own auditing officers before it becomes perfect. Should the State expressly enact to that effect, it would then become a question whether such enactment did not enter into the contract and form part of it. But as no such statute has been referred to, we are not called upon to examine that question. The offer here tends to prove "an indebtedness to the State" in the sum named, and if an auditing constituted an essential element of an indebtedness, proof of such auditing would be included in the offer made.

Although a State cannot be sued, I think it is subject to a set-off, like individuals, when it comes into Court as a Plaintiff, and that both upon principle and authority. When it becomes a suitor, it waives for the time its dignity as a sovereign. It lays aside its strong arm, by which it can at once enforce its own claims, and submits itself to the arbitration of the Court, and to

its practice and its proceedings.    For this purpose it is like
an individual or an inferior corporation; and becoming volun-
tarily a party to a suit, no good reason can be given why it
should not be bound by the same rules that are applicable to
other parties in the same position.  (State of Illinois *v.* Dela-
field, 8 Paige, 535; United States *v.* Arredondo, 6 Peters, 711,
712; The same *v.* Bank of Metropolis, 15 Peters, 377.)   To
the same effect is the statute (2 R. S. 553) which enacts that
where suits are brought in the name of the People, they "shall
be subject to all the provisions of law respecting similar suits
and proceedings, when instituted in the name of any citizen,
except when provision is or shall be otherwise expressly made
by statute; and in all such suits the People shall be liable
to be non-suited, and to have judgment of *non fers* or discon-
tinuance entered against them, in the same cases and in the like
manner and with the same effect, as in suits brought by
citizens, except that no execution shall issue thereon."    The
State is subject to the same rules of pleadings and of evidence, to
the same practice, will submit to be dismissed from Court where
an individual would be, subjects itself to a liability for costs, and
makes no reservation whatever, except in the single instance
that execution shall not issue against it.    The costs are directed
to be paid by the Comptroller upon production of the payment of
the judgment record, and the certificate of the Attorney-General.
(*Ib.*)  I have no doubt that this statute does, and was intended to
subject the State to a set-off, where a set-off would exist against
an individual plaintiff.

The Plaintiff seeks to sustain the judgment of the Court below
upon the further ground that the prison warden had no right to
contract any debt with the bank for the purpose mentioned, and
that therefore the evidence was properly rejected.   If the evi-
dence had been admitted, it could have been readily ascertained
whether there was an indebtedness against the State which would
properly form the subject of a set-off.   We have no means of
knowing what the evidence of the Defendants could be.    They
offered to prove that " the State was indebted to the Bank in the

sum of $17,377.27, as alleged in the answer," and the answer alleged the indebtedness to have arisen from money furnished by the bank to the prison warden, for the purpose of the prison. They also offered to prove that "the same indebtedness arose from moneys borrowed by the agent of the prison, which are necessary and was used for supplies of food for the inmates of the prison." If in any possible form, or under any conceivable circumstances, an indebtedness could have arisen from this advance of money, then the evidence of the Defendants was improperly excluded. It will be observed that the offer does not state that the claim of indebtedness consists in or of the facts stated, but that it "arose" from these facts. If the legislature, upon a full statement of the facts, had directed the payment of the money through the Comptroller or Treasurer, and these officers had issued their draft or acceptance promising to pay it, I doubt not that this promise would have been an indebtedness to the State, and arising out of the transaction in the answer referred to, and would have constituted a valid set-off. Possibly a much less formal recognition would have made it a debt against the State. The Defendants are entitled to every possible assumption in favor of the evidence offered to be produced by them.

It is urged in this connection that this defence was not available, because the bank was not a party, and would not be bound by any statement of its indebtedness thus to be made. To this, as well as to the entire objection of the want of power to create a debt which we are discussing, it is a sufficient answer that no such objection was taken below.

The rule is that no dilatory objection can be urged here which was not taken at the trial, and the present instance illustrates the wisdom of the rule. If it had been claimed in the Court below that the bank was a necessary party, the obvious remedy would have been an order that the cause stand over for the purpose of making the bank a party. By now allowing an objection which the party omitted to interpose at the proper time, a valuable right of the Defendants would be destroyed.

The Plaintiff cannot, therefore, be permitted now to urge it.

The case states that the evidence was excluded "solely on the ground that in an action by the State no counter-claim or set-off can be allowed. The party should be held to this proposition.

I am of the opinion that the Court below erred in rejecting the evidence offered, and that a new trial should be ordered.

PORTER, J., concurred in the opinion of Judge Hunt.

Affirmed.

JOEL TIFFANY,

State Reporter.
