ROBERT H. McKIBBIN, Respondent, *v.* HORATIO N. PECK, Appellant.

*Contract—Freight Money—Insurance—Loss in Transitu—Rights of Carrier.*

Where an insurance was effected on goods by request of the shipper, at the place of shipment, and made payable, in case of loss, to the owner or his shipping agent, the circumstance that the sum insured was, by request of such agent, made sufficient to cover the cost of the goods and the freight to their destination, does not create any presumption that the carrier's interest in the freight was protected, nor entitle the carrier (after a loss on the voyage and payment of the sum insured to the owner of the goods) to maintain an action against the latter for so much money had and received to his use.

The voluntary payment of the premium by the carrier to the insurance company after the loss, does not affect the question.

Where in such case the boat containing the goods was, without any fault of the carrier, sunk on the voyage in a canal-basin, and the goods were damaged, but the carrier was ready and willing, and offered, to render all due assistance in recovering the goods, and to carry them forward to their destination, in full performance of his agreement to carry, but, the owner having surrrendered all his interest in the goods to the insurance company, the agents of the latter accepted the damaged goods at the place of the accident, and voluntarily relieved the carrier from his duty to carry further—*Held*, that the carrier was entitled to freight, pro rata itineris.

As between the owner and the carrier, the act of the insurance company in accepting the goods at the place of the accident, is to be deemed warranted by the owner's surrender of his interest to them, and, therefore, to be the act of the owner himself; and he is, therefore, liable to the carrier for a just proportion of the whole freight, pro rata itineris.

This was an appeal from the judgment of the General Term, affirming the judgment entered in favor of the Plaintiff upon trial at the Erie Circuit.

It appeared that on the fifteenth day of November, 1860, the Plaintiff was the owner of the canal-boat Brooklyn, and on that day he received on board of said boat, at Buffalo, five thousand eight hundred bushels of white wheat, to be transported to the city of New York, at twenty-two cents per bushel, which was shipped by James D. Sawyer, and bills of lading given therefor,

consigning said wheat to the Defendant, care L. Roberts & Co., New York.   Pease & Trowbridge were forwarding and commission merchants, doing business in Buffalo, and they had an arrangement with the Plaintiff in respect to loading his boats, and procured for him the said wheat for transportation.   Duplicate bills of lading were made, one signed by Sawyer, and the other by Pease & Trowbridge, one of which was returned by them, and the other given to Sawyer.

They also made a skeleton bill of lading, and gave it to the captain of the boat to take with the cargo, and ordered, at first, $7,000 to be insured on the cargo, and brought the certificate of insurance therefor to Mr. Sawyer, who figured up the cost of the wheat and of the transportation, and told Pease & Trowbridge they must procure $1,000 further insurance to cover the cost of the freight of the wheat to the city of New York.   They then took the certificate of insurance back to the office, and procured another insurance, by which Pease & Trowbridge were insured under policy No. 209, issued by the Resolute Fire Insurance Company, for $8,000 on cargo of wheat on board of boat Brooklyn, in manner as follows: $5,500 at and from Buffalo to New York; $2,500 at and from Troy to New York; loss, if any, payable to James D. Sawyer.

The policy referred to in the certificate No. 209, was an open policy of insurance, issued by the Resolute Fire Insurance Company of New York to the Plaintiff.   This policy contained a provision, that on occurrence of damage to a boat, endangering the cargo, it should be the duty of the captain and crew, or those having command, to use the utmost diligence and attention to save the property until some agent of the company should arrive, and upon his arrival to assist him in the care and saving of the property; and neglect to do so would render the policy void.   It also contained this provision: " And it is understood there can be no abandonment of the subject insured."   Another provision was: " In case of wet grain, the dry portion in the boat, if any, to be considered as a sample of the condition and quality of the

cargo when shipped, and the said loss or damage to be *estimated according to the true and actual cash value* of said property at the place of destination on the day of the disaster; and on property not forwarded to its destination, the said loss or damage to be ascertained in the same manner, and the freight from the place of the disaster to the place of destination to be deducted." The arrangement between the Plaintiff and Pease & Trowbridge was this: The Plaintiff had a certain number of boats that season running between Buffalo and New York, and the agreement was that Pease & Trowbridge should, as agents for the Plaintiff, obtain lading for those boats, for which services they were to receive a commission. That the freight should belong to the Plaintiff, and should be collected in New York by Plaintiff's brother, H. McKibbin. This boat, with her cargo, was sunk on the 2d December, 1860, at Albany Basin, in the Hudson River. Captain L. B. Fortier acted as agent for the insurance company. His business was that of inspector, and to act as agent of the company in taking care of damaged property, and he was sent to Albany by the agents of the insurance company who issued the policy, to see to the cargo in question.

Sawyer was the agent of the Defendant in shipping the wheat, and the Defendant was at Buffalo when it was shipped. The Plaintiff, immediately after the disaster, went to Albany, and there met Fortier, and told him he had two empty boats in New York, and could send them up and have the wheat transferred into those boats.

Fortier replied that he thought of having the wheat kiln-dried in Albany. Fortier told the Plaintiff that he thought it would be better to take the wheat to New York in boats then at Albany, and thus save the expense of bringing up those boats, and it was done. Plaintiff offered to take the wheat down.

On the 10th December, 1860, L. Roberts & Co., to whose care the wheat was consigned for the Defendant, gave the insurance company notice of the loss, and that they abandoned to the com-

pany all title and interest in the cargo; and on the 5th January, 1861, the insurance company settled with L. Roberts & Co. for the loss, and paid them the amount thereof for the Defendant, which loss was arrived at upon the following basis, and an account thereof made as follows:

New York, January 5th, 1861.

Insurance Company,

In account with L. ROBERTS & Co.

Produce Commission Merchants.

To 5,800 bushels white wheat, cargo boat Brooklyn, sunk December 2d, 1860, near Albany, $1.33 . . . . . . . . . . 　$7,704 00
Less 5 cts. per bushel freight from place of accident to
　New York, . . . . . . . . . . . . . . . . . . . . . . . .$290 00
Less per policy . . . . . . . . . . . . . . . . . . . . . . . .50 00　　340 00

　　　　　　　　　　　　　　　　　　　　　　　　$7,374 00

The value of the wheat in the condition it was shipped, if it had arrived in New York on the day of the accident, or within two or three days thereafter, was admitted to be $1.33 per bushel.

The insurance company settled and paid the loss in accordance with the above statement. They paid $5,000 upon the loss on the 3d of January, 1861, and the balance on the 8th of March, 1861, deducting interest on the $5,000 paid in advance, no part of which was due, according to the terms of the policy, until sixty days after notice and proof of loss.

The premium for this insurance was paid by the Plaintiff, on or about the 1st day of December, 1860.

The action was brought to recover for the freight earned in the transportation of the wheat, or rather the amount received by the Defendant of the insurance company, on account thereof.

The certificate of insurance was endorsed by Sawyer in blank, and delivered to the Defendant, and he remitted it to L. Roberts & Co., who adjusted it with the insurance company, and received

for the Defendant the insurance money, in accordance with the foregoing statement, L. Roberts & Co. being at the time under acceptances, and having advanced for the Defendant, but not on this particular cargo.

The Plaintiff had a verdict for $967.41, being the excess received by the Defendant on the policy of insurance, over and above the value of the wheat in New York at the time it should have been delivered, deducting from such value twenty-two cents per bushel for transportation thereof, and making proper allowances for interest.

The questions raised appear in the opinion. A judgment was entered, and appeal taken to the General Term of the Supreme Court, which affirmed the judgment, and Defendant appealed to this Court.

*J. H. Reynolds* for Appellant.

*George B. Hibbard* for Respondent.

MILLER, J.—The facts elicited upon the trial of this cause show that the Plaintiff agreed to carry the wheat by virtue of a contract made by his agents, Pease & Trowbridge, who had no actual interest in the contract, but who acted merely for the Plaintiff in procuring the cargo, and in effecting an insurance on the wheat and freight to New York for a sufficient amount to cover its value upon its arrival there. Although the certificate of insurance was in the names of the agents, and that fact was not disclosed, still it was effected for the Plaintiff's benefit, under an open policy, and the premium paid by him. Sawyer, the agent of the Defendant, to whom the loss was payable, if any occurred, was a mere appointee to receive the money for the parties who might be entitled to it.

As the freight was not paid, all the Defendant could have recovered would have been the value of the wheat at the place of delivery, deducting the amount of freight. The Defendant actually received upon the policy of insurance a larger amount than the value of the wheat in New York, and more than he was actually entitled to receive. What he received beyond this did not

belong to him, and was the freight for the wheat which the Plaintiff, who had performed this service, if any one, was entitled to receive. The Defendant having thus received from the company the value of the freight (which should have been paid to the Plaintiff) without any legal or equitable right thereto, I think that he received it as the money of the Plaintiff, and is bound to account for the same to the Plaintiff, unless there is some insuperable legal difficulty in the way. Such an obstacle, I think, does not exist in this case.

It sufficiently appears that the Plaintiff was really the insured party, at least to the extent of the freight, although nominally the certificate stated that Pease & Trowbridge were insured. The question whether the Plaintiff could recover upon the policy of insurance does not arise in this case ; and whatever rule might apply if the action was brought directly upon the policy, it cannot now be claimed that the Plaintiff cannot recover because he was not nominally the insured party. Here the insurance company has actually paid the money, and the question to be determined is, who is entitled to that portion of it which remains after the Defendant has been paid the full value of the property lost ? It matters not that the Plaintiff could not originally have maintained an action upon the policy, and it is enough that the Defendant received money which the Plaintiff had an equitable title to receive. The action is not really to recover for the freight pro rata itineris, as is claimed by the Defendant, but in substance, and in fact, is an action for money had and received by the Defendant.

It is claimed by the Defendant that parol evidence was not admissible to prove that the insurance was intended for any other person than the one for whom it is stated in the certificate to have been made. If an action lies to recover the money of the Defendant upon the ground that it was paid to him by the insurance company, and equitably belongs to the Plaintiff, as I think it does, then this objection cannot be sustained.

Even if this rule might be invoked, if the action was brought on the policy, it would not in my opinion be applicable in a case

where the right to recover depends upon the equitable right of the Plaintiff to the money. The evidence was admissible for the purpose of showing who paid the money for the insurance ; that Pease & Trowbridge merely acted as agents of the Plaintiff, and that the money in the Defendant's possession belonged to the Plaintiff.

In Dykers *v.* Townsend (24 N. Y. 57) it was held that a subscription by the agent of a party to be charged for stock purchased, is sufficient under the Statute of Frauds, though the name or existence of a principal does not appear upon the instrument; and parol evidence was held to be competent for the purpose of establishing that the subscription was in fact made by the Defendant. I think, therefore, that although the contract made was in the name of the Plaintiff's agent, it was, in fact, a contract made by the Plaintiff, and the objection urged is not available.

The question made, whether there was an abandonment of the property, was a question between the insurer and the insured only, and is not material; for if the money received by the Defendant was actually received for the benefit of the Plaintiff, then it is of no sort of importance whether or not there was an abandonment. There was, however, some evidence on that subject, and there was no error committed in submitting to the jury the question whether the cargo insured had been abandoned to the underwriters, on the behalf of the Defendant, and with his authority, or that he had subsequently ratified such abandonment, and secured the full amount of the insurance upon a settlement made on the basis of such abandonment. The evidence tended to show that the abandonment was authorized by the Defendant. Roberts & Co., the consignees of the Defendant, gave notice to the company to that effect; the company assented to it, and paid the money to the consignees, who paid it over to the Defendant. I am inclined to think that even if we concede that the consignees had no power to bind the Defendant by the abandonment of the property, which is not entirely obvious, that the Defendant sanctioned and ratified the act of abandonment by receiving the benefits of the insurance; and having thus acquiesced in it, he is not in a position to object to the act which he has

approved, without first returning the amount received by means thereof. He is precluded from denying its force and validity.

It was competent to prove what took place between McKibbin, the Plaintiff, and Fortier, the agent of the insurance company, after the disaster to the vessel. What actually became of the cargo after the boat was sunk, was a part of the res gestæ. The testimony showed what disposition was made of the wheat, and the arrangement made in regard to it by the insurance agent. It may also be observed that what passed between Fortier and the Plaintiff was of no consequence, if the Defendant actually received an excess of money over the amount he could have recovered of the Plaintiff in an action brought by him for the loss of the wheat.

The testimony could not have changed the result, and the judgment will not be reversed for the admission of such evidence (The People v. Brandeth, 36 N. Y. 191).

The insurance was clearly intended to cover the freight, and, I think, it was not necessary that the freight should be insured eo nomine. By the policy the amount to be paid was the value of the property at the place of destination, deducting the freight from the place of the disaster on the property which did not reach its destination. This included the value of the freight, deducting reasonable costs of transportation to the place of destination. But if it did not, the amount was actually paid the Defendant by the insurance company, and having received it, he is not in a position to claim that it was not covered by the policy.

This discussion covers substantially all the questions raised and, I think, there was no error upon the trial, and the judgment should be affirmed.

Woodruff, J.—If the Defendant, being the owner of the wheat in question, had caused himself to be insured in Rochester or in New York, by a certificate of insurance, in the same form as was issued by the Resolute Insurance Company, and referring, for details of the contract, to a policy containing the same conditions as are found in policy No. 209, which was here referred to, I

think it would hardly be claimed that the Plaintiff acquired or had any interest therein, or in the money which, in case of loss, would become payable to the Defendant.

It would have been a very simple case in which, up to a certain specified amount, the owner had insured his goods, and by the conditions of the policy the insured, notwithstanding the sum named in the policy, could recover no more than the value of the goods in New York; and if the loss happened before arrival, the freight from the place of loss to the city of New York must be deducted.

As between the owner and the insurance company, the freight between the place of loss and New York might become a material inquiry, and it might be wholly immaterial; but the amount of the freight or cost of transportation from the place of shipment to the place of loss could never come in question between them. Transportation of the goods towards a contemplated market does, in the expectation of the parties, increase the value. But whether it does in fact increase the value depends upon the state of that market and the price at which the goods can be sold after their arrival.

The rights of the parties under their contracts do not depend on the actual price of the goods in New York, but upon the contracts themselves and the relations thereby established.

Now in the case just supposed—i.e., an insurance by the Defendant himself: suppose, by a rise in the market between the 15th of November (the date of shipment) and the 2d day of December (when the goods were sunk), the wheat on the last-named day had been worth in New York ($1.70) one dollar and seventy cents per bushel, the Defendant, under his policy, could only collect the sum insured—$8,000—which is less than $1.39 per bushel, and the case would be free from the apparent element that the Defendant had collected from the insurance company the very freight which the Plaintiff claims in this action. But, as already suggested, if the Defendant had himself made the insurance, it would in nowise have concerned the Plaintiff that he had insured the wheat —whether he had insured it at one sum or another, or whether he had collected on such insurance more or less than its value.

The Plaintiff would have had no better claim than he would if the Defendant had sold the wheat at $1.33 per bushel, free of freight and charges, the purchaser assuming all risk of loss or damage on the transportation.

And yet, in case of loss by the way, the Defendant might even in such case be said, in a loose sense, to have actually received the freight—i.e., he would have sold his wheat at New York price, which presumptively covers the cost of getting the wheat to the city. I am not able to discover anything in the form of the present insurance, or in the manner in which it was effected, that makes the case before us differ from the case I have thus supposed, or which warranted the submission of the question—whether the insurance was for the Plaintiff's benefit—to the jury.

By request of Sawyer (the agent of the Plaintiff, and shipper of the goods) Pease & Trowbridge (who had engaged the wheat for transportation in the Plaintiff's boat) insured the wheat in their own name, loss payable to the order of the shipper ; and he endorsed the certificate of insurance to the Defendant's consignees. In this there is nothing to indicate that any one was to have the benefit of the insurance but the owner of the wheat. It was the wheat that was insured, not the freight thereon ; the consignees stood in the place of the Defendant. The legal relations established by this form of making the contract made it an insurance of the wheat to a sum named, loss payable to the owner, and gave to him, or his consignees and factors for his benefit, a right to enforce the contract. I do not perceive that, on the consummation of the arrangement, Peck, the owner, stood in any other relation to the Plaintiff than he would if the policy, instead of being assigned to him, had been taken in his name.

It is, however, suggested that the proof showed that the sum insured was intentionally made large enough to cover the freight. Undoubtedly it was made $8,000, instead of $7,000, with an expectation that it would cover the whole value of the wheat to the owner, including freight and charges ; and the amount was fixed by the shipper (not by the Plaintiff, nor his agents) for that purpose. But this does not show that it was intended as an insurance

for the Plaintiff's benefit. It no more tends ·to show that than ·would the fact that the Defendant, had he procured the insurance in New York in his own name, fixed an amount which he supposed·would cover his whole risk in value, charges, and freight.

And so also, in the present case, as before, the policy fixing the value in New York as the utmost which could be recovered, the question whether in truth freight and charges were covered or not, would depend on the market price there on the day·of loss·; and on the other hand, as the sum insured was the limit of the indemnity which the Defendant could recover if the price in New York should advance largely, the recovery by the Defendant might not be equal to the value of the goods, irrespective of freight. That the fact that Sawyer, the Defendant's agent, desired the sum insured should be advanced to the sum of $8,000, so as to cover the freight, in nowise tends to establish any interest of the Plaintiff in the insurance money, is further apparent from the certificate of insurance, in its specification of the sum insured. Thus, the insurance was to the amount of $5,500 from Buffalo to New York, and an additional $2,500 from Troy to New York. That is to say, the insurance company would be liable to the amount of $5,500 if the wheat was lost between Buffalo and Troy, and to the amount of $8,000 if lost between Troy and New York. Now, suppose the wheat had been .lost before it reached Troy. The utmost the Defendant could recover on the insurance would ·be $5,500, and yet the value of the wheat in New York, the place where, by the policy, the value was to be ascertained, was $7,714·; and with the deduction of the freight·to New York $6,438. In such case the Defendant would recover $5,500, and submit to the loss of the difference. Where, in such case, would be the argument that the Defendant had collected the freight by virtue of the policy ?

I deem it clear that, upon the face of the papers, and as matter of law, the Plaintiff has no interest in the policy, and no concern· therewith.

True, the Plaintiff testified that *about* the 1st December (the loss having happened on the 2d) he paid the premium of insu-

rance. Doubtless, if it had not been paid, the insurance company, having given credit therefor from the 15th of November, would have deducted it from their payment of the loss. But the payment by the Plaintiff cannot alter the legal effect of the policy. It may entitle him to be repaid that amount. A carrier to convey the goods intrusted to him for carriage may be entitled to add insurance to his freight, but in order to do this he must show some request, or some usage, or some sanction, by way of affirmance; and it is doubtless true in this case that Pease & Trowbridge, who, at the request of Sawyer (Defendant's agent), effected the insurance, would have a just claim for the premium paid. And although I do not perceive any connection between the certificate of insurance and policy No. 209, except that, for brevity, that policy was, in respect of form, referred to for an expansion of the certificate, and as an exposition of the responsibilities assumed by the company, and of the conditions of that responsibility; still, as the Plaintiff paid the premium which Pease & Trowbridge, while acting as his agents in procuring freight for his boat, became liable for, and as that payment enured to the Defendant's benefit, I think he was entitled to be reimbursed by the Defendant. This discussion shows, as I think, that the insurance, and the amount recovered upon the insurance, is no guide to the determination of the rights of the parties. It is a perfectly well settled and familiar rule, that freight is not covered by insurance, except when it is insured eo nomine; and yet it is entirely competent for the owner of goods to insure them, and agree with the insurers (as was done in this case) that the value at the place of destination shall govern the recovery, within the limits of the sum insured. Whenever the value at the place of destination is so agreed to, it does, in a sense, include the freight—that is to say, it includes whatever additional value the transportation has given to the goods, if any it be. But it does not insure *the freight*, either in form or in fact. Cases might be supposed in which such an insurance—the value at the place of destination being the measure of recovery—would not yield even so much as the freight.

On this branch of the subject the conclusion is, I think, inevi-

table.   The question between the Plaintiff and the Defendant is
*not* whether the Defendant has collected his insurance, but has
the Plaintiff earned his freight ? or has he earned freight pro rata
itineris ?   For if he has, then, and in either case, the amount
which he has recovered by the verdict is not greater than is earned.

By the contract the Plaintiff was to carry the wheat to New
York, and freight would not be payable, according to the con-
tract, if the wheat was not transported.   An actual destruction
of the wheat on the journey would deprive the Plaintiff of the
opportunity to earn freight, wherever such destruction happened,
and although within sight of the city, and notwithstanding such
destruction was by act of God, and without any fault of the
Plaintiff.

Nevertheless, the wheat in its entire passage was subject to the
actual control of the owner.   He could take the wheat from the
carrier's possession, if he saw fit, at any point on the journey,
whether it had been injured or not.   But he could not thereby
deprive the carrier of his full freight.   Having accepted the goods
and begun the performance of his contract, the carrier was
entitled to earn his freight ; and if the owner chose to take the
goods from him at any point, he could do so, but he must pay, in
that case, full freight to New York.

Out of these two propositions spring the duty of the carrier in
case of accident endangering the transportation on the one hand,
and the duty of the owner to pay freight pro rata on the other.

When the Plaintiff's boat was sunk in the Basin at Albany, he
was not absolved from his contract ; it remained, as it was before,
his duty to provide means of transportation, if they could be had,
and, using reasonable care for the preservation of the damaged
property, bring it to New York and deliver it according to the
bills of lading ; and if he neglected to do this (unless absolved by
the act of the Defendant, or some one acting on his behalf, or
unless the expense would have exceeded the whole freight from
Buffalo to New York), he could not recover freight.   In such a
condition of things it would be absurd to inquire whether the
Defendant had insured the property.

6

On the other hand, if the Defendant, against the will of the Plaintiff, took possession of the wheat, and deprived him of the opportunity to earn freight, then the Defendant would be liable for the freight which the Plaintiff was entitled to earn, and which he could and would have earned but for the Defendant's interference.

And intermediate these extremes, if the Defendant voluntarily accepted the wheat at Albany, in relief of the Plaintiff, and with his assent, then the Plaintiff was justly and legally entitled to recover for the service already performed, if the damage to the goods was from no fault or negligence on his part, or on the part of his agents. Although the question of negligence was in issue by the pleadings, no question on that subject appears to have been raised on the trial, and no proof was given of the extent of the damage, nor whether it could be made a counter-claim if it arose from the Plaintiff's fault. The theory upon which the case was tried probably made these questions appear immaterial.

Was there, then, an acceptance of the wheat at Albany, with the Plaintiff's assent, which relieved the latter from the duty of bringing on the goods, and made it the duty of the Defendant to pay for the service already rendered ? ˙ I think the jury have, in substance, found the facts which compel an affirmative answer to that question.

The Defendant accepted a policy which authorized the agents of the insurance company, in case of damage to the goods, to intervene "in the care and saving of the property." He had himself forwarded the certificate of insurance to his consignees, L. Roberts & Co., endorsed to them. That act, per se, authorized them to deal with the insurance company and collect the insurance. Payment of the value of the property in full by the company, as for a total loss to the Defendant, operated, on well settled principles, to vest in the company the spes recuperandi, and whatever could be saved, and so amounted to an affirmance of the possession of the wheat taken by the insurance company for its care and preservation.

It is not necessary to call this a technical abandonment under

the law of insurance. The owner had not, under the policy, a right to *insist* on abandoning. But this would not prevent, and did not prevent the parties consenting to treat the case as one of total loss—the company having taken actual possession of the property saved; and if they so agreed, and the Defendant accepted such payment, he consented to actual and practical abandonment of the damaged wheat to the company, and their acts in relation thereto.

In this view it is clear that there was evidence warranting the jury in finding a voluntary acceptance of the wheat at Albany, ratified by the Defendant. The Plaintiff offered to bring the damaged wheat to New York, and if he had insisted upon doing so, I do not perceive that his claim to full freight to New York could be defeated, unless it was shown that the wheat was damaged by the way, and he failed to show himself without fault therein. But although he offered to bring the wheat to New York, yet, according to his own testimony, he yielded to the opinion of the insurance agent, and gave up the possession. I think this being in fact acted upon and affirmed by the Defendant, completed the right of the Plaintiff to have freight to Albany, unless such right could be overcome by a counter-claim, that the damage to the wheat was caused by his fault, and exceeded the pro rata freight.

For these reasons, I think the judgment may be affirmed, notwithstanding what I regard as an erroneous view of the relative rights of the parties that governed the trial.

Clerke, Grover, Mason, and Dwight, JJ., affirm in accordance with the opinion of Judge Woodruff.

Affirmed.

JOEL TIFFANY,
State Reporter.