THE PEOPLE OF THE STATE OF NEW YORK ex rel. J. SHELDON FROST et al., Respondents, *v.* EGBURT E. WOODBURY et al., Comprising the State Board of Tax Commissioners et al., Appellants.

Officers — Mortgage Tax Law — construction of provisions thereof for allowance and payment of expenses incurred in collecting tax upon mortgages — definition and application of the term "necessary expenses for the purposes of this article" — attorney-general — designation of counsel by.

1. While the attorney-general under section 65 of the Executive Law (Cons. Laws, ch. 18) may employ additional counsel to assist in the transaction of any legal business in which the state is interested, such law requires that counsel shall be designated by the attorney-general, and payment for his services rendered under such designation is to be made from the appropriation available for such purposes upon audit by the attorney-general and from the treasury of the state.

2. The expenses incident to the duty imposed upon recording officers which are allowed in connection with the collection of the

tax upon a mortgage presented for record, are limited in their scope by section 262 of the Tax Law (Cons. Laws, ch. 60) to the "necessary expenses for the purposes" of the article of which it forms a part.

3. The word "necessary" may express something indispensable, or it may be construed as reasonable, useful and proper, dependable upon the character of its application. When used with reference to the public, it should be construed strictly for the benefit of the public.

4. In the absence of specific authority, the funds received by the recording officer cannot be ordered by the court to be paid for any purpose, except by express authority of the legislature. Construction should not be given to this statute which would admit of the employment of counsel by a recording officer, and thus empower him to create a liability for payment therefor against the state and county, and the funds owned by them respectively.

*People ex rel. Frost* v. *Woodbury*, 161 App. Div. 25, reversed.

(Argued October 5, 1914; decided November 10, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 4, 1914, which annulled on certiorari a determination of the state board of tax commissioners disallowing the claim of the relators for services and allowed said claim.

One John Franey was clerk of the county of Albany in the year 1909, and on the 8th day of February of that year a corporate mortgage securing an issue of bonds was presented to him for record. The county clerk refused to receive the mortgage for record unless the full tax thereon was paid. The corporation conceded liability to pay a portion of the tax and finally paid the entire tax, protesting, however, that five hundred and forty dollars of the payment was exempt. Upon receipt of the entire tax the county clerk recorded the mortgage. Thereupon the corporation filed a petition with the state board of tax commissioners for a review of the basis adopted by the county clerk for computing the tax, under section 256 of the Tax Law, but before a decision by the state board of tax commissioners on said review the corporation brought an action in the Supreme Court in Albany county

against John Franey as county clerk to recover the sum of five hundred and forty dollars with interest thereon. The summons and complaint served on the county clerk were delivered by him to one of the relators herein who was, at the time, county attorney and the legal adviser of the board of supervisors of Albany county, the county clerk believing it was his duty to deliver said papers to the county attorney.

The relators appeared in the action and answered for the defendant, and, amongst the separate defenses, set up that the corporation had sought a review of the basis of the tax at the hands of the state board of tax commissioners. By stipulation between the parties that issue was brought on for trial in March, 1910, and resulted in a determination that the defense thus set up was not a legal defense to the cause of action and judgment was entered in April, 1910, dismissing the defense, with costs. Thereafter the county clerk took an appeal to the Appellate Division of the Supreme Court, third department, where the judgment was reversed and a new trial ordered, the practice adopted by the parties having been condemned by the Appellate Division. (142 App. Div. 143.) Thereupon the plaintiff in the action discontinued the same and paid to the counsel for the county clerk costs to the amount of two hundred and five dollars and disbursements of seventy-one dollars and seventy-nine cents.

Thereafter the relators presented to the county clerk a bill amounting to three hundred dollars for legal services, which was forwarded by the clerk to the state board of tax commissioners for allowance. The state board of tax commissioners referred the matter to the attorney-general of the state, and after advice received from him refused to allow the claim. Certiorari, to review the action of the state board of tax commissioners, in which the attorney-general was named as a party, was granted upon the application of the relators, and after argument at the Appellate Division an order was made that the

determination of the state board of tax commissioners, whereby the claim of relators for services in the sum of three hundred dollars was disapproved and disallowed, be annulled on the law and facts, and that the said claim of relators be allowed, with costs and disbursements to be taxed.

From the order of the Appellate Division the state board of tax commissioners and the attorney-general appeal to this court.

*James A. Parsons, Attorney-General (William A. McQuaid* and *Claude T. Dawes* of counsel), for appellants. The relators having received no reply from the attorney-general to their letter of March 8, 1909, and the relator Warner, one of their firm, having refused to proceed as county attorney, the relators' legal status in the action up to May 10, 1910, when further communication was opened with the attorney-general's office, could have been no other than that of private counsel to the county clerk, or that of persons rendering services gratuitously to the state. (*Thomas* v. *Gage*, 141 N. Y. 506; *Viele* v. *McLean*, 20 N. Y. 260.) Although the relators up to May 10, 1910, rendered services beneficial to the state, there having been no designation by the attorney-general, the services, so far as the state was concerned, were gratuitous, and the attorney-general had no authority, even if there had been a designation after that date, to pay for services rendered gratuitously prior to the designation. (L. 1909, ch. 23, § 65.)

*J. S. Frost* and *Andrew J. Nellis* for respondents.

HOGAN, J. The Appellate Division held that the expenses of the defense of the action brought by the corporation against John Franey as county clerk of Albany county was one of the "necessary expenses for the purposes of this article" as provided in section 262 of the Tax Law (Cons. Laws, ch. 60), and that the county clerk was authorized to employ an attorney in the defense

of the action and properly charge the fund in his posses-sion with the expenses attendant thereon; that the county clerk in the collection of the tax does not act for the county, but as the agent of the state.

The correctness of the conclusion of the Appellate Division involves an examination of the provisions of the Tax Law relative to the imposition of taxes upon the recording of mortgages, as well as the duty to be per-formed by the county clerk.

By article 11 of the Tax Law a tax was imposed upon the principal debt or obligation secured by mortgage upon real property situate within this state, payable to the recording officer of the county in which the property mortgaged was situate. The recording officer is required to indorse upon each mortgage a receipt for the amount of tax paid, and is inhibited from recording any mortgage unless the tax imposed thereon shall be paid.

It is made the duty of recording officers in counties outside of Greater New York to pay over to the county treasurer on the first day of each month the moneys received by him during the preceding month on account of taxes paid to him, after deducting the necessary expenses of his office as prescribed in section 262 of the law, except taxes paid upon a mortgage which under the provision of section 260 was to be apportioned by the state board of tax commissioners between several counties. When such determination has been made it is made the duty of the recording officer to file in the office of the recording officers of such other counties a brief descrip-tion of the mortgage on which such tax is paid sufficient to identify the same, together with a statement of the payment of such tax and the amount thereof.

The state board of tax commissioners are empowered to adopt rules to govern their procedure, and may require certified statements to be furnished by recording officers of the respective counties in relation thereto, and upon making determination file a certificate with the recording

officer of each county within which a portion of the mortgaged property is situate, and thereupon a minute of such determination shall be entered in the margin of the record of the mortgage, and likewise a certificate shall be made when the state board of tax commissioners apportion between respective counties the amount on which the tax is to be computed.

It is further a duty of the recording officer prior to the first day of November in each year to cause to be prepared a list containing a description of all mortgages upon which taxes have been paid by reference to the date of each mortgage, the name of the mortgagor and mortgagee, the amount of the principal due upon which the tax was paid, together with the book and page where said mortgage is recorded, together with the town, city or village in which the mortgaged property is assessed, and if assessed in two or more tax districts the amount apportioned to each tax district by the state board of tax commissioners, and the amount deducted for his necessary expenses as approved by the state board of tax commissioners. Such statement shall be filed in his office and he is required to furnish a copy thereof to the clerk of the board of supervisors and another copy thereof to the state board of tax commissioners; thereafter the board of supervisors from the statement filed with them by the county clerk apportions one-half of the tax paid to the county treasurer under the act, one-half to the payment of school taxes, and one-half thereof to the payment of state, county, city and town expenses.

The recording officer, as well as the county treasurer, is required to furnish a bond conditioned for the faithful and diligent discharge of the duties required of them respectively to the people of the state in a penal sum not exceeding twenty-five thousand dollars as the state comptroller may prescribe.

Another duty imposed upon the recording officer arises in case a mortgage is given to secure the payment of a

series of bonds, notes or other evidence of indebtedness. The mortgagor when he pays a tax on said mortgage may present to the recording officer bonds, notes or other evidence of indebtedness, secured by said mortgage, and it thereupon becomes the duty of the recording officer to indorse upon each of said bonds, notes or other evidence of indebtedness presented to him a statement signed by him to the effect that the tax imposed by this article on that portion of the principal indebtedness secured by the mortgage represented by bonds, notes or other evidence of indebtedness has been paid and such statement is made conclusive proof of such payment.

Attention has been called to the various duties imposed by the Tax Law upon the recording officer in addition to the ordinary duties performed by him as county clerk. It is apparent that the labor imposed upon the recording officer by the Tax Law involves a keeping of books of account covering the various transactions referred to, the employment of accountants, copyists and assistants in his office, expenses for postage, books, blanks, wages of employees and other items incidental to the services required.   Section 262 of the Tax Law provides:

"Recording officers and county treasurers and the chamberlain of the city of New York, shall severally be entitled to receive all their necessary expenses for the purposes of this article, including printing, hire of clerks and assistants, being first approved and allowed by the state board of tax commissioners, which shall be retained by them out of the moneys coming into their hands."

By the language of the statute quoted, the expenses incident to the duty imposed upon recording officers were limited in their scope to the "necessary expenses for the purposes of this article."

The word "necessary" has no meaning peculiar to itself; it may express something indispensable, or it may be construed as reasonable, useful and proper, dependable upon the character of its application.   When used

with reference to the public, as in the statute under consideration, it should be construed strictly for the benefit of the public. The words "*for the purposes of this article,*" as used in the statute, were intended as words of limitation to restrict the allowance for necessary expenses incurred by the recording officers in the performance of duties imposed upon them by the article of the Tax Law, which we have enumerated.

To give to the words "necessary expenses" as used in the law construction which would admit of the employment of counsel by a recording officer, whenever in his fancy he might deem it desirable to consult counsel, and thus empower him to create a liability for payment of the same against the state, county, and the funds owned by them respectively was not contemplated by the legislature, and if such construction were to prevail would result in a departure from the safeguards erected about the disposition of public funds and the authority of officers to create an indebtedness against a county or the state, whether such officer be an agent of the state or of the county, or act in a public capacity for the benefit of the state and the county.

The policy of the law is to the contrary. (Constitution, article 3, section 21; article 7, section 4; *Matter of Tinsley,* 90 N. Y. 231; *Matter of Chapman* v. *City of N. Y.,* 168 N. Y. 80–86; *Hughes* v. *County of Monroe,* 147 N. Y. 49; *People ex rel. Everett* v. *Board of Supervisors, Ulster Co.,* 93 N. Y. 397; *Miller* v. *Mayor, etc., of N. Y.* 76 N. Y. 151; *People* v. *Brandreth,* 36 N. Y. 191; *Bratt* v. *Gibbs,* 185 N. Y. 614.)

In *Bratt* v. *Gibbs* (185 N. Y. 614) the action was brought by plaintiff against the commissioners of highways of a town for legal services in opposing the laying out of a highway, in which opposition the town was successful, largely to the benefit of the taxpayers of the town. The position on the part of the commissioners and their conduct in employing counsel were indisputably all in good

faith. The facts relating to the case are collated in a subsequent proceeding (*McCoy* v. *McClarty*, 53 Misc. Rep. 69) in an opinion by Mr. Justice VAN KIRK, and it is unnecessary to reiterate them in this opinion. An examination of that case discloses the policy of the courts established in the *Bratt Case* (185 N. Y. 614, *supra*), the liability of the commissioners personally to the attorney employed by them indisputably for the rendering of services for the benefit of the taxpayers of the town.

In the case at bar the tax collected by the recording officer was not to be devoted solely to the benefit of the state. The county of Albany, in which the officer resided, was a beneficiary equally with the state of the avails of the mortgage tax. The fund, until distributed, was under the management and control of the state; when paid over one-half of the same became a part of the general fund of the state, and the remainder funds of the county of Albany. In the absence of specific authority such funds cannot be ordered by the court to be paid for any purpose, except by express authority of the legislature. (*Matter of Tinsley*, 90 N. Y. 231.) We do not find such authority in the statute under consideration, or in any general statute. On the contrary, we think the statute inhibits the payment or disposition of such funds by the court. The Tax Law gives to the state board of tax commissioners supervisory power over the recording officer. Section 266 of the Tax Law also imposes upon the attorney-general the duty of enforcing payment of taxes thereunder in the name of the people of the state, and by section 62 of the Executive Law it is made the duty of the attorney-general to prosecute and defend all actions and proceedings in which the state is interested. Had Mr. Franey, the county clerk, refused to record the mortgage in question, the mortgagor might then have proceeded by mandamus to compel the recording of the same and the question of the validity of the tax claimed by Mr. Franey would be determined in such proceeding,

and, in that proceeding, the attorney-general would, if called upon, be required to defend the county clerk, and such has been the practice. (*People ex rel. Title Guarantee & Trust Co.* v. *Grifenhagen*, 209 N. Y. 569.) Likewise, the action commenced against Franey, as county clerk, after the payment of the tax, was one in which the state was interested as it affected his action in the collection of funds belonging to the state and the county of Albany. The corporation having paid the tax under protest, and then sought the remedy provided by the statute, namely, a review by the state board of tax commissioners, could if dissatisfied with the determination made by that board resort to the remedy of certiorari to review such determination, and the attorney-general being the legal adviser of the state board, he would be required under section 62, above referred to, to defend such certiorari proceedings.

While the attorney-general under section 65 of the Executive Law may employ additional counsel to assist in the transaction of any legal business in which the state is interested, such law requires that counsel shall be designated by the attorney-general, and payment for his services rendered under such designation is to be made from the appropriation available for such purposes upon audit by the attorney-general and from the treasury of the state.

It is not claimed in this case that the relators were designated by the attorney-general, but it is alleged that the attorney-general had knowledge of the employment of the relators and acquiesced therein.

The attorney-general cannot bind the state save in the manner prescribed by law. (*Matter of Attorney-General* v. *Continental Life Insurance Co.*, 88 N. Y. 571.) If we assume for the purposes of this case to the contrary, that the attorney-general was bound by knowledge of the proceeding, and non-action by him was equivalent to a designation of relators as attorneys to represent Franey,

this proceeding would not lie against the state board of tax commissioners and attorney-general to recover for such services, as the statute in such event provides that the compensation for services thus rendered should be audited by the attorney-general and paid out of the moneys appropriated for such purpose by the state.

The services rendered by the relators were not "necessary expenses for the purposes of this article" mentioned in section 262 of the Tax Law. Any liability for the services of the relators was the individual liability of the party employing them, and it cannot be assumed that the legislature will not recognize the equity of their claim and provide for the payment of the same in view of the mistaken belief of the county clerk that one of the relators being the county attorney was required to defend such action by reason of such office. The attorney-general was not a proper party to these proceedings, and the effect of this proceeding was indirectly an action against the state in the absence of statutory authority.

The order of the Appellate Division should be reversed and the determination of state board of tax commissioners confirmed, with costs in both courts.

WERNER, HISCOCK, COLLIN, MILLER and CARDOZO, JJ., concur; CHASE, J., dissents.

Order reversed, etc.