(15 Misc. Rep. 322.)

## MILLER v. BOARD et al.

(Fulton County Court. December, 1895.)

OFFICE AND OFFICER—PERSONAL LIABILITY—CONTRACTS.

Village trustees, contracting, on behalf of the village, with one who knows their official position, and that such contract is without validity unless confirmed by the board of trustees, are not personally liable on such contract, in the absence of proof of intent on their part to render themselves so liable.[1]

Appeal from justice court.

Action by Miles D. Miller against William Board and Lewis K. Maylender for damages for the nonperformance of an alleged contract between plaintiff and defendants, whereby, as claimed by plaintiff, he was employed by defendants to act as chief of police of the village of Johnstown, but was not permitted to enter on the discharge of the functions of such office. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Frank L. Anderson, for appellants.
Clark L. Jordan, for respondent.

KECK, J. The right of recovery in this action against the two appellant defendants depends upon the facts as to whether or not the alleged contract or agreement of employment between the plaintiff and defendants was a valid one, and, if made as claimed by plaintiff, enforceable against the appellants individually. There is no question but that, at the time of the making of the alleged contract for the employment of the plaintiff, the defendants were trustees of the village of Johnstown, and whatever was said by and between the parties on the subject of the plaintiff's employment related solely to his being so employed as chief of the police force of said village, and that the plaintiff so understood it, because, when he was sworn upon the trial of the action, he said:

"It was in the evening of December 24, 1894, I met the defendants there, and defendant Maylender spoke first, and said that his business with me was that he desired to have me to act as chief of police of the village of Johnstown as soon as their present chief finished up his work. * * * He asked me if I would take the place. I said, 'Yes.' I asked him what the wages

---

[1] See Olifiers v. Belmont (Com. Pl. N. Y.) 36 N. Y. Supp. 813, affirming 33 N. Y. Supp. 275.

would be, and he said they had been paying $50 per month; but I said I would not work for $50, and then he said they would pay me $55. I was to go to work on the following Monday night. Mr. Little spoke to the other two, and said, 'When shall we have Mr. Miller report for duty?' And they both said, 'On Monday night.' "

On cross-examination he further said:

"Q. Did you understand that the defendants were trustees of the village of Johnstown at the time you had this conversation? A. Yes; I so understood it. It was by reason of their being trustees that I had the conversation with them. Q. Did you understand that, before you could become a policeman of the village of Johnstown, you would have to be appointed by the board of trustees in Johnstown? A. I did. I knew that these men did not constitute the whole board of trustees."

This, with other testimony given on the trial of the case, establishes, without dispute or doubt, the fact that the defendants were trustees of the village, acting in matters relating solely to such village, and that the plaintiff knew it at the time of the alleged agreement or contract; and he also knew that, before he could become chief of police, his appointment had to be confirmed by the board of trustees of the village. The case is barren of proof of any special obligation or intent on the part of the defendants and appellants to become personally liable to the plaintiff upon such alleged contract, and it is therefore difficult to see how they can be made liable for damages resulting from or growing out of the same. If the alleged contract failed to bind or obligate the defendants personally, then this action ought not to be maintained against the appellants, for the rule of law is well settled that an agent who discloses his principal will not be personally liable upon a contract made by him in behalf of such principal, and within the scope of his authority, to the person with whom such contract is made; and the rule is much more strongly applied in favor of the nonliability of a person who is a public officer, and acts, and is understood to be acting, as such in the making of an agreement or contract relative to the public business devolving upon him by reason of such public office. Here, as stated above, the plaintiff knew that defendants were public officers and were negotiating with him about matters relating to the public business, the performance of which was cast upon them by the laws of the state.

In the case of Nichols v. Moody, 22 Barb. 611, it is held that:

"A public agent, acting in the line of his duty, is not personally liable upon contracts made by him on behalf of the government, unless it appears that the credit was given to, or the labor performed for, the agent himself, and on his agreement and promise to pay, or the fact of his being a public agent was unknown, and not disclosed at the time of making the contract. It is not to be presumed either that a public agent intends to bind himself personally in acting as a functionary of the government, or that a party contracting with him in his public character means to rely upon his individual responsibility."

In the case of Hall v. Lauderdale, 46 N. Y. 70, the rule was laid down by the court of appeals that:

"An agent acting within the scope of his authority, and disclosing his agency, will not be personally bound, unless upon clear and explicit evidence of such an intention. The rule is still stronger in the case of a public agent."

In the light, therefore, of the undisputed facts of this case, and the rule of law governing it, it must be held that the judgment rendered

against the two appellants was and is wrong, and must be reversed, with costs, and an order is directed to be entered accordingly.

Judgment reversed, with costs.