(61 Misc. Rep. 23.)

### BURGARD v. STATE.

(Court of Claims of New York. November, 1905.)

STATES (§ 108*)—CONTRACTS—CLAIMS FOR ADDITIONAL EXPENDITURES.

   Claimant contracted with the state to construct a road, the material to be in accordance with the contract. The division engineer, having no authority to bind the state, rejected the material provided. The contractor, without obtaining approval of the proper authorities, substituted more expensive material. *Held,* that he could not recover the difference in cost against the state.

   [Ed. Note.—For other cases, see States, Dec. Dig. § 108.*]

Prosecution by Henry P. Burgard of a claim against the State of New York for services in constructing a state road. Claim dismissed.

O'Malley, Smith & O'Malley, for claimant.

Julius M. Mayer, Atty. Gen., and Willis H. Tennant, Deputy Atty. Gen., for the State.

MURRAY, J. On the trial of this case the claimant abandoned all the damages asked for, excepting the item of $1,678.79, which he claimed due him from the state by reason of a change made in the material used in the building of the highway in question.

In the year 1898 the claimant entered into a contract with the state for the building and construction of 6.54 miles of the White Corners plank road between the city of Buffalo and the village of Hamburg, in the county of Erie. His claim in respect to the above-mentioned item is that, when the printed proposals inviting bids for this work were is-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sued by the state, he submitted samples of the stone he proposed to use in the construction of the road; that, during the process of the work, the agent of the state (a division engineer) rejected the stone of the sample, which it is claimed was submitted to and accepted by the State Engineer, and required him to use stone known as "Yamerthal flint," which was more expensive than stone of the quality of the sample submitted; that, when this request was made, he complied with it, contending that he would not waive any of his rights against the state to compensation for damages because of the extra cost of substituting and using the Yamerthal flint. The road was built, and the claimant was paid the contract price agreed to by the state. In 1904, on May 6th, the usual enabling act was passed by the Legislature (Laws 1904, p. 1472, c. 621), authorizing the presentation of the claim to this court.

The contract provided:

"Should any work be required that in the judgment of the State Engineer is not included under these specifications, or not covered by the prices named in the contract, such work shall be done pursuant to the State Engineer's written directions after a price therefor shall have been agreed upon"—

and other clauses construable and evidently intended to mean that the contract should not be changed without the direction of the State Engineer.

On the threshold of the case two pertinent questions arise: First. If the claimant had a legal contract with the state, permitting him to use stone of the kind and quality of the sample furnished, he could have relied upon that and refused to use and substitute Yamerthal flint. The state, then, had no right to require a change of the stone; and, if its division engineer insisted, the claimant could have declined to follow the directions given, and, if not allowed to complete his contract, might have maintained an action for damages; or he could have communicated with the State Engineer and Surveyor, and given the proper authority an opportunity to determine whether the directions should be insisted on or not.

Second. If the division engineer had the right to require the change of the stone—and this was the theory upon which the case was tried —then had the engineer personally the authority to bind the state to a modification of the contract to pay the claimant, as for additional work done, the alleged extra cost of furnishing and using Yamerthal flint in the construction of the "good road"? The contract, as seen, provided: If the work was not covered by the prices named, then extra work was to be done pursuant to the written directions of the State Engineer, after a price for it should have been agreed upon. The claimant did not apply to the State Engineer for any written directions, nor did he agree with him to be paid any additional price. His counsel excused any effort to obtain this direction by stating, on the trial, that the claimant didn't want to waste his time or incur the expense of going to Albany to see the State Engineer and Surveyor, and relied on conversations had with the division engineer. The evidence shows that conversations or negotiations were had by claimant with the division engineer respecting the change of the stone. The specifications provided that the "top course should consist of Yamerthal lime-

stone or other limestone equally hard." It appears from Mr. Rockwood's letter (infra) the claimant had other stone, and after they were used was to procure the Yamerthal. The claimant testified:

"Mr. Rockwood objected to the stone being used. He said the stone was according to specifications. * * * I said, 'All right, if you don't want this stone before you, you will get other stone; but I don't waive any rights I may have in the matter.'"

It is not claimed that the division engineer made any express promise, and I doubt if any specific agreement was made by him to pay any definite sum. I think the substance of these conversations was contained in the letter of Mr. Rockwood, the division engineer, dated May 22, 1899. But it will be noticed, in his letter the division engineer expressly declares: "None of which to be binding upon the state until approved by the State Engineer." The claimant made no effort to procure this approval. If it was "not covered by the prices named," he must have known it was required by his contract; and he had additional notice by this letter that it was necessary. But he did nothing, and contented himself with the announcement that he didn't waive his rights. He was evidently lax, or negligent, at least, in taking no precautionary steps to avoid legal controversy.

But, assuming that the claimant's utmost contention is true, that he was not obliged to use Yamerthal flint, and that the division engineer did agree that the state would compensate Mr. Burgard for the use of the substituted stone, the question then would be: Could he, a division engineer, by his promise bind the state? I think not. One dealing with a public officer is bound to take notice of the scope and limitation of his authority. It is a matter of record, and courts, as well as individuals, must take notice of the extent of the authority conferred upon a person acting in an official capacity. Clark & Skyles, Agency, vol. 1, pp. 478, 479, § 205; Whiteside v. U. S., 93 U. S. 247, 23 L. Ed. 882; Delafield v. State, 26 Wend. (N. Y.) 192, 222, 223; People v. Brandreth, 36 N. Y. 191; People v. Van Nort, 15 Abb. Prac. (N. S.) 242; Miller v. Board, 15 Misc. Rep. 322, 37 N. Y. Supp. 766. With the contract before them, the agents of a government have but one duty to perform. That is to see the contract is carried out according to its letter and spirit. No authority is given them to extend the contract, and no conduct of theirs can estop the government from asserting its rights. Pine River Logging & Imp. Co. v. United States, 186 U. S. 279–291, 22 Sup. Ct. 920, 46 L. Ed. 1164; Kirwan v. Murphy, 189 U. S. 35–54, 23 Sup. Ct. 599, 47 L. Ed. 698. Where additional work or better material than the contract requires is ordered by a subordinate officer, compliance of the contractor must be regarded as voluntary service, even though the defendants acquire a benefit by the change. A government cannot thus be compelled to build a better building than was intended. A local agent, architect, or a division engineer is such a subordinate officer, and has no power to vary a contract or to bind the government. Driscoll's Case, 34 U. S. Ct. Cl. 508, 509–524; Burton v. U. S., 24 U. S. Ct. Cl. 514–547; Ford's Case, 17 U. S. Ct. Cl. 60; Potter v. U. S., 122 Fed. 49, 50–54, 58 C. C. A. 231.

The case of Hawkins v. U. S., 96 U. S. 689, 24 L. Ed. 607, is almost

parallel with the case at bar. Here A. agreed to furnish stone of certain description under a contract which provided that no departure should be made from its conditions without written consent, etc. The assistant superintendent declined to receive certain of the stones, although they were within the description of the contract, and required A. to furnish other of a different and more expensive kind, which the latter did. Held, A. was bound to take notice of the fact that the assistant superintendent had no power to vary the contract. The court say:

"All that is proved in that regard is that he maintained that the first parcel of stone delivered was up to contract; and that he protested, in presence of the inspector and superintendents, that he was required to furnish stone superior to that described in contract, and that he announced to them his intention to make claim for extra allowance. (Page 693 of 96 U. S.) * * * What he alleges is that he was required by the assistant superintendent to furnish better stone than that specified in the written agreement. Proof of that allegation is exhibited; but there is not a particle of proof that the assistant superintendent ever promised that the United States should pay for the stone delivered any greater sum than the contract price, * * * and if he had so promised it would not have bound the United States. (Pages 693–696, and cases cited.)"

In this case Mr. Rockwood didn't claim any right to bind the state. His letter states, "It wasn't binding upon the state until approved by the State Engineer." If the claimant, by his negligence, ignorance, or mistake, made no effort to, and did not, procure this approval, any alleged loss must be his own.

To establish a rule that any subordinate employé of the state could bind the state by any enlargement, diminution, or variation of a contract would, in my opinion, be a dangerous principle to establish. It would open the door to favoritism, fraud, and collusion, and a flood gate to litigation. As has been so well said (Lee v. Munroe, 7 Cranch, 370, 3 L. Ed. 373; Clark & Skyles, Agency, vol. 1, pp. 478, 479, § 205):

"It is better that an individual should now and then suffer * * * than to introduce a rule against an abuse of which, by improper collusion, it would be very difficult for the public to protect itself."

For these reasons I am of the opinion the claim herein should be dismissed, and judgment rendered for the state.

Claim dismissed.

